WO                                                                                                    **LMH**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Antonio Marquez Aguilar,        ) | No. CV 04-1271-PHX-JAT (JCG) |
| Plaintiff,        ) | **ORDER** |
| vs.        ) | |
| Dora Schriro, et al.,        ) | |
| Defendants.        ) | |

Plaintiff Antonio Marquez Aguilar, a state prisoner, filed this *pro se* civil rights action regarding conditions in Special Management Unit II, the highest custody level in the Arizona Department of Corrections. Defendants have filed two separate motions for summary judgment (Doc. ##46-47, 51-52). Plaintiff has failed to respond to either one, although he was twice given notice of his rights and obligations to respond (Doc. ##49, 53). The Court will grant summary judgment in favor of Defendants.

**I. Background**

It is undisputed that Plaintiff was validated as a member of a Security Threat Group known as the New Mexican Mafia and as a result, on March 24, 2003, he was placed in a maximum custody arrangement known as Special Management Unit II. In SMU II, the inmates are severely restricted in movement, and they lack privileges granted to inmates at lower custody levels. Plaintiff, unhappy with his circumstances, sued Dora Schriro, the Director of the Arizona Department of Corrections; Deputy Warden Conrad Luna; and

Barbara Shearer, Correction Classification Specialist. Count III of Plaintiff's Complaint was dismissed without prejudice for lack of exhaustion (Doc. #13). The remaining counts are Count I – that he was denied due process in his placement and subsequent reviews – and Count II – that the conditions in SMU II violate the Eighth Amendment.

Defendants moved for summary judgment, contending that (1) Plaintiff received adequate procedural due process in his initial placement and continuing reviews, and (2) the conditions in SMU II do not violate the Eighth Amendment, nor were Defendants deliberately indifferent (Doc. ##46-47). Plaintiff, despite having been notified of his rights and obligation to respond to Defendants' motion, failed to respond (Doc. #49). Defendants then filed a second summary judgment motion, contending that they are entitled to summary judgment on Plaintiff's claims that he lacked sufficient exercise, sunlight and fresh air, and that he was subjected to 24-hour lighting (Doc. ##51-52). Plaintiff also failed to respond to their motion despite notification of his rights and obligation to do so (Doc. #53).

**II. Summary Judgment Standard**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). When considering a summary judgment motion, the evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). These inferences are limited, however, "to those upon which a reasonable jury might return a verdict." Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1220 (9th Cir. 1995).

Rule 56(c) mandates the entry of summary judgment against a party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial. Celotex, 477 U.S. at 322-23. Rule 56(e) compels the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial" and not to "rest upon the mere

1  allegations or denials of [the party's] pleading." The nonmoving party must do more than
2  "simply show that there is some metaphysical doubt as to the material facts." Matsushita
3  Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). There is no issue
4  for trial unless there is sufficient evidence favoring the non-moving party. Anderson, 477
5  U.S. at 249. Summary judgment is warranted if the evidence is "merely colorable" or "not
6  significantly probative." Id. at 249-50.

7  **III.  Count I:  Due Process**

8  In Count I, Plaintiff alleges that he was denied due process by indefinite placement
9  in SMU II without any meaningful review. For the initial decision to place an inmate in
10 maximum custody, due process is satisfied by notice of the factual basis for the placement
11 and an opportunity to be heard. Wilkinson v. Austin, 125 S. Ct. 2384, 2395-97 (2005) (to
12 be reported at 545 U.S. 209); Hewitt v. Helms, 459 U.S. 460, 476 (1983). Administrative
13 segregation "may not be used as a pretext for indefinite confinement," which means that
14 prison officials must engage "in some sort of periodic review of the confinement of such
15 inmates." Hewitt, 459 U.S. at 477 n.9.

16 Defendants contend that when Plaintiff was initially placed in SMU II, he received
17 notice prior to his validation hearing, he was permitted to appear and present a defense, he
18 could request witnesses, and he could appeal the validation decision (DSOF ¶¶ 13-24, 59-65
19 & Ex. 1, Gerrish Decl. ¶¶ 9-10, 15-20, Doc. #47). He did appear but did not request
20 witnesses, and his appeal was denied (Gerrish Decl. ¶¶ 15, 17). Plaintiff's placement in
21 SMU II was reviewed every 180 days (Id., ¶ 14). For each of Plaintiff's 180-day reviews,
22 he was given the opportunity to be present, call relevant witnesses, have the assistance of a
23 willing employee, receive a finalized copy of the committee's findings, and appeal
24 classification errors and overrides (DSOF ¶¶ 48-57, 67, 69 & Ex. 2, Crabtree Decl. ¶¶ 4-10,
25 14-17). Plaintiff has not responded to Defendants' assertions. The evidence on this record
26 shows that the minimal due process requirements were satisfied for Plaintiff's initial
27 placement in SMU II and subsequent reviews. Accordingly, summary judgment will granted
28 in favor of Defendants on this claim.

**IV. Count II: Conditions**

In Count II, Plaintiff claims that the long-term isolation in SMU II violates the Eighth Amendment because: (1) he lacks an adequate opportunity for outdoor recreation and exposure to direct sunlight and fresh air; (2) he lacks adequate clothing for exercise and warmth; (3) his cell is lit 24 hours a day; (4) he is served limited quantities of food; and (5) he is restricted from social and environmental stimulation. Defendants respond that the conditions satisfy the Eighth Amendment requirement of the "minimal civilized measure of life's necessities." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

According to Defendants, Plaintiff has one hour of recreation three times per week. Although the walls of the recreation yard are cement, fresh air and sunlight come through a mesh roof over the yard. To keep warm, Plaintiff may buy a jumpsuit or sweats from the inmate store and for exercise, he may request to use a handball (DSOF ¶¶ 32, 35-26 & Ex. 1, McWilliams Decl. ¶¶ 19, 22-23, Doc. #47). Beginning December 12, 2005, the ADC doubled the number of weekly hours to three two-hour sessions per week, for a total of six hours (DSSOF ¶ 2 & Ex. 1, McWilliams Decl. ¶ 5, Doc. #52).

Defendants further assert that the lighting does not violate the Eighth Amendment. For security reasons, during sleeping hours, the lights in Plaintiff's cell are not turned off but are significantly dimmed. The level of light is less disruptive to inmates' sleep than if the officers used bright flashlights to periodically check on them (DSOF ¶¶ 19-24 & Ex. 1, McWilliams Decl. ¶¶ 6-12, Doc. #47). The amount of light emitted at night from the dimmed security lighting is comparable to a nightlight (DSSOF ¶¶ 17, 32-42 & Ex. 1, McWilliams Decl. ¶ 20, Ex. 2, Katafiasz Decl. ¶ 11, Doc. #52). Also, Plaintiff has not alleged that he has been prevented from sleeping.

Defendants further contend that Plaintiff's nutritional needs are met because he receives three meals per day during the week and two larger meals on the weekends. A nutritionist determines the amount of calories for lower levels of activity (DSOF ¶ 38 & Ex.

- 4 -

1, McWilliams Decl. ¶ 25, Doc. #47). There is no indication in the record that Plaintiff did not receive the same diet as all the other inmates in SMU II.

Defendants have also shown that Plaintiff does not totally lack social stimulation. He can talk to staff several times during the day and talk to a counselor five times a week face to face (DSOF ¶ 26 & Ex. 1, McWilliams Decl. ¶ 14, Doc. #47). He has access to health services (DSOF ¶ 27 & Ex. 1, McWilliams Decl. ¶ 14). He may have a radio and a television (DSOF ¶ 29 & Ex. 1, McWilliams Decl. ¶ 16). He may have one two-hour visit each week, with up to four visitors at one time (DSOF ¶ 33 & Ex. 1, McWilliams Decl. ¶ 20). He may make one five-minute phone call each week (DSOF ¶ 34 & Ex. 1, McWilliams Decl. ¶ 21). Although he cannot participate in work, vocational, or educational programs, he can participate in programs in his cell (DSOF ¶ 41 & Ex. 1, McWilliams Decl. ¶ 27).

Plaintiff has not responded to Defendants' assertions and as stated, he may not rest on his allegations when Defendants' motion is supported. Because the evidence to shows that the conditions of SMU II did not violate the Eighth Amendment, Defendants are entitled to summary judgment on this claim.

**IT IS ORDERED** that Defendants' Motions for Summary Judgment (##46-47, 51-52) are **granted**. The Clerk of Court must enter judgment accordingly.

**DATED this 24th day of August, 2006.**

James A. Teilborg
United States District Judge